# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ARIYAN, INC. D/B/A DISCOUNT CORNER, ET AL.**<br><br>   **Plaintiffs,**<br><br>   **v.**<br><br>**SEWERAGE & WATER BOARD OF NEW ORLEANS, AND GHASSAN KORBAN, IN HIS CAPACITY AS EXECUTIVE DIRECTOR OF SEWERAGE & WATER BOARD OF NEW ORLEANS**<br><br>   **Defendants.** | **CIVIL ACTION NO.: 21-534**<br><br>**SECTION: F**<br><br>**JUDGE: FELDMAN**<br><br>**DIVISION: 1**<br><br>**MAGISTRATE: VAN MEERVELD** |

## OPPOSITION TO MOTION TO DISMISS

Plaintiffs, Ariyan, Inc. D/B/A Discount Corner, et al. (hereinafter, collectively, "Plaintiffs"), respectfully submit this Opposition to the Motion to Dismiss (R. Doc. 13) (hereinafter, "Motion") filed by Defendants, Sewerage & Water Board of New Orleans (the "SWBNO") and Ghassan Korban, in his capacity as Executive Director of the SWBNO ("Korban") (hereinafter, collectively, "Defendants").

## INTRODUCTION

The SWBNO does not dispute that it has refused to pay, and has no plan to pay, final state court judgments based in inverse condemnation and awarding Plaintiffs just compensation. Instead, the SWBNO claims that Plaintiffs' "attempt[] to circumvent Louisiana's constitutional and statutory anti-seizure provisions" through the federal court system is procedurally improper. (R. Doc. 13-1, p. 1). However, the U.S. Supreme Court's recent decision in *Knick v. Township of Scott, Pennsylvania* (hereinafter, "*Knick*") makes clear that "a government violates the Takings Clause when it takes property without compensation, and a property owner may bring a Fifth

Amendment claim under § 1983 at that time." 139 S. Ct. 2162, 2177 (2019). Thus, pursuant to *Knick*, Plaintiffs may now proceed in this Court to enforce payment of just compensation owed by the SWBNO, due to the state trial court's judgments casting the SWBNO in liability for inverse condemnation. What Plaintiffs are now seeking to do—which *Knick* authorizes—is bring a separate claim for the SWBNO's nonpayment of just compensation.

The SWBNO's Motion primarily relies upon another Section of this Court's dismissal of a similar complaint in *Violet Dock Port Inc., LLC v. Heaphy,* 2019 WL 6307945 (E.D. La. Nov. 23, 2019). The SWBNO, however, omits the critical fact that *Violet Dock Port* was appealed to the Fifth Circuit Court of Appeals, orally argued, and then settled before the Fifth Circuit could rule on the correctness of Judge Lemelle's ruling. Respectfully, Judge Lemelle's ruling in *Violet Dock Port* is incorrect as a matter of law and likely would have been overturned had the matter not settled. Regardless, this Section of Court is not bound by another Section's ruling.

Furthermore, the case law relied upon by Defendants to support their Motion is distinguishable from the present case. The cases cited by Defendants involve underlying tort or contract claims and judgments, while here, the underlying claims are constitutional, arising from the Louisiana and United States constitutions, and involve the constitutional right to just compensation for inverse condemnation and takings committed by the SWBNO.

The injustice in the SWBNO's refusal to pay Plaintiffs' just compensation is particularly great here. The SWBNO's latest financial statements indicate that it possesses assets exceeding $3 billion and a projected budget surplus, and it has specifically allocated over $43 million to the very construction project that caused Plaintiffs' constitutional damages. Furthermore, the SWBNO anticipated years before construction started that SELA would cause property damages to Plaintiffs, and it agreed to resolve these damages. However, to date, the SWBNO has not paid

a penny to Plaintiffs. Because Plaintiffs have alleged actionable claims under 42 U.S.C. § 1983, Defendants' Motion to Dismiss should be denied.

## FACTUAL & PROCEDURAL BACKGROUND

The SWBNO is a political subdivision of the State of Louisiana, created pursuant to La. R.S. 33:4071. Defendant Korban is the Executive Director of the SWBNO. Plaintiffs originally filed claims against the SWBNO in state court, alleging damages caused to their properties by construction of the South East Louisiana Drainage Project known as "SELA" in the Uptown and Carrollton neighborhoods of New Orleans. *See* (R. Doc. 1). Plaintiffs' state court suits specifically noted that "any substantial interference with the free use and enjoyment of property may constitute a taking of property within the meaning of the federal and state constitutions." *Id.* at ¶ 35. Plaintiffs' claims were grounded in inverse condemnation and prior precedent holding the SWBNO liable for damages caused by a prior phase of SELA, specifically *Holzenthal v. Sewerage and Water Board of New Orleans*, 2006-0796 (La. App. 4 Cir. 1/10/07, 950 So.2d 55, 63, *writ denied*, 2007-0294 (La. 3/30/07), 953 So.2d 71. Like Plaintiffs' cases, *Holzenthal* was primarily an inverse condemnation case.

The SWBNO's contention that Plaintiffs' judgments are based in "tort," and thus not subject to payment at this time, *see* (R. Doc. 13-1, p. 4), is incorrect. As alleged in the Complaint, the trial court's judgments specifically award all Plaintiffs just compensation damages arising from inverse condemnation caused by the SWBNO. (R. Doc. 1, at ¶¶ 38, 41, 43, 45). These are constitutional claims and constitutional damages. While Plaintiffs also alleged and prevailed on claims against the SWBNO pursuant to Louisiana Civil Code articles 667, 2317, and 2317.1, these claims arose from the inverse condemnation claims, as demonstrated by the fact that the trial court did not award any separate or additional damages for these claims. *See id*. at ¶¶ 38, 41, 43, 45.

All of Plaintiffs' judgments are final and executable, totaling $10,530,236.70, plus interest accruing on a daily basis at the legal rate. *Id.* at ¶ 52. Plaintiffs' counsel has made demand on Defendants for payment and requested that the SWBNO submit the judgments for credit to the U.S. Army Corps of Engineers ("USACE") through the Damages SOP process. *Id.* at ¶ 54. These demands have gone either unanswered or met with vague and ambiguous responses.

The SWBNO's latest financial statements indicate that it possesses assets exceeding $3 billion and a projected budget surplus. *Id.* at ¶ 53. Further, it has specifically allocated over $43 million to SELA. The SWBNO has the ability to increase rates, issue bonds, and otherwise raise capital to satisfy these outstanding judgments. *Id.* The SWBNO knew years before the construction started that property damages would result to Plaintiffs and contractually agreed to resolve claims arising from these damages. *Id*. at p. 6. The plain language of the Damages SOP process also allows SWBNO to receive credits from USACE for resolution of SELA damage claims, which the SWBNO has done for non-litigants. *Id.*

Accordingly, the SWBNO has had more than a reasonable period of time to arrange for payment and pay Plaintiffs' judgments, yet, it has failed to do so. *Id.* at ¶ 55. The SWBNO's clear intention—to avoid payment (or a plan for payment) of Plaintiffs' just compensation judgments— constitutes a sufficient federal interest in the claims; as such, Plaintiffs brought this suit. *Id.*

## LAW & ARGUMENT

### I.      Standard of Review – Motion to Dismiss, FRCP 12(b)(6)

A court ruling on a Fed. Rule Civ. P. 12(b)(6) motion may rely only upon the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citing *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 338 (5th Cir. 2008)).

A complaint will survive a motion to dismiss under F.R.C.P. 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   When reviewing the complaint, "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Papasan v. Allain*, 478 U.S. 265, 283 (1986).

## II.   The Court Should Disregard Defendants' Unsubstantiated Allegations and Documents Outside of the Complaint for Purposes of this Motion.

Defendants' Motion is largely supported by unsubstantiated allegations not contained in the Complaint.   The Court is to disregard these allegations under the well-established standards for district courts to review a motion to dismiss set forth immediately above.   These allegations include, but are not limited to, Defendant's purported descriptions of the Damages SOP process and payment obligations with the USACE. *See e.g*. (R. Doc. 13-1, pp. 6-7).   Defendants also attach a 2016 email between counsel in the state court case that has no bearing on the current case or Motion, has been taken out of context, is a confidential mediation communication, and was clearly attached to inflame Plaintiffs' counsel.   This exhibit, too, should be excluded from consideration in this Motion.

## III.   Plaintiffs' Complaint Presents an Actionable Claim Under 42 U.S.C. § 1983.

Plaintiffs have properly plead an actionable claim against Defendants pursuant to 42 U.S.C. § 1983 for Defendants' failure to compensate Plaintiffs for just compensation awarded as a result of the SWBNO's constitutional takings of Plaintiffs' properties.   The viability of Plaintiffs' claims is supported by Section 1983, the U.S. Constitution, and federal and state case law.

### A.   The Fifth Amendment Requires the SWBNO's Payment of Just Compensation to Plaintiffs' Without Unreasonable Delay.

Section 1983 provides a federal cause of action for "the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws."  Here, the SWBNO's conduct deprived Plaintiffs of their right to just compensation secured by the Fourteenth Amendment, which provides that a State shall not "deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, and the Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, and which directs that "private property" shall not "be taken for public use, without just compensation."  U.S. Const. amend. V; *see also Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162 (2019).

When the government "physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 233 (2003) (internal quotation marks and citation omitted).  Although the Supreme Court does not require that payment precede the taking, it has clarified that a quick taking does not violate due process under the Fourteenth Amendment "where adequate provision is made for the *certain payment* of the compensation *without unreasonable delay*."  *Bragg v. Weaver*, 251 U.S. 57, 62 (1919) (emphasis added).

Thus, the law is settled that Plaintiffs are constitutionally entitled to certain payment of just compensation without unreasonable delay.  The state court judgments memorialized and quantified the just compensation to which Plaintiffs are entitled, but these judgments did not result in payment of the just compensation.  As a result of the SWBNO's unlawful refusal to pay, Plaintiffs are now left without their property interests and without any certainty at all that they will ever be paid just compensation for their loss of property interests.  Although Defendants contend that the obligation to pay just compensation is not mandatory, the Fifth Amendment's language is expressly to the contrary.  This Court should recognize that a Section 1983 claim is available when state actors take private property but fail to pay the state court judgment establishing the amount of just

6

compensation due.

   **B.  The U.S. Supreme Court's Decision in *Knick* Provides a Direct Legal Basis for Plaintiffs' Section 1893 Claims.**

   The U.S. Supreme Court's recent decision in *Knick* reaffirmed the importance of the existence of a federal court remedy to protect private owners against Fifth and Fourteenth Amendment violations.  *Knick* confirmed that the Fifth Amendment's Just Compensation Clause is to be taken seriously and not as "'a poor relation' among the provisions of the Bill of Rights." *Knick*, 139 S. Ct. at 2169.  *Knick* also reaffirmed that a landowner "'is entitled to reasonable, certain and adequate provision for obtaining compensation' after a taking."  *Id.* at 2175 (quoting *Cherokee Nation v. S Kan. Ry. Co*., 135 U.S. 641, 659 (1890)).  As explained by the Court, "[t]he Framers meant to prohibit the Federal Government from *taking* property without paying for it. Allowing the government to *keep* the property pending subsequent compensation to the owner … was not what they envisioned."  *Id*. at 2176 (emphasis in original).  For over a hundred years, the Supreme Court has recognized that these rules apply to state actors.

   With regard to state law remedies for seeking just compensation, the *Knic*k Court explained:

> The availability of any particular compensation remedy … cannot infringe or restrict the property owner's federal constitutional claim—just as the existence of a state action for battery does not bar a Fourth Amendment claim of excessive force. The fact that the State has provided a property owner with a procedure that may subsequently result in just compensation cannot deprive the owner of his Fifth Amendment right to compensation under the Constitution, leaving only the state law right. And that is key because it is the existence of the Fifth Amendment right that allows the owner to proceed directly to federal court under §1983.  *Id*. at 2171.

   The Court specifically rejected the view that there are "§ 1983-specific" requirements beyond what the Constitution provides.  *Id*. at 2175 n.6.  The Court overturned an earlier case, *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S.

172 (1985), which required the exhaustion of state court remedies before bringing a takings claim to federal court, finding that it was unworkable and inequitable, because it often placed landowners in a "Catch-22" situation in which they were prevented from ever bringing otherwise valid Fifth Amendment claims. *See Knick*, 139 S. Ct. at 2173. The Court concluded that "the state-litigation requirement [set forth in *Williamson*] imposes an unjustifiable burden on takings plaintiffs, conflicts with the rest of our takings jurisprudence, and must be overruled. A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Id.* at 2167.

### C. Federal Case Law Prior to *Knick* Also Supports Plaintiffs' Section 1983 Claims.

Even prior to *Knick*, Plaintiffs' Section 1983 claims against Defendants would have been viable, because Plaintiffs have exhausted their state court remedies in seeking just compensation from the SWBNO, have not received the just compensation that was awarded, and now are seeking to enforce the payment of that just compensation in this Court. Indeed, in *Williamson County*, the U.S. Supreme Court allowed, after exhaustion of state court remedies, for plaintiffs to pursue takings claims in federal court. *See Knick*, 139 S. Ct. at 2167 ("The Williamson County Court anticipated that if the property owner failed to secure just compensation under state law in state court, he would be able to bring a 'ripe' federal takings claims in federal court.").

Here, Plaintiffs are not seeking to re-litigate any issue decided by the state court. Plaintiffs recognize that the amount of compensation that is due is binding here. Instead, Plaintiffs are seeking to compel payment of the just compensation judgments, which is exactly what *Williamson County* anticipated could be done following the exhaustion of state remedies. Though *Knick* overruled the exhaustion requirement, there is nothing in *Knick* that precludes seeking relief in federal court when state court procedures and remedies prove unable to secure payment of

compensation as required under the Fifth and Fourteenth Amendments.

Even before *Knick*, Louisiana federal courts recognized that a Section 1983 action was proper to remedy a local government's taking of private property, even when the taking is reflected by a state court judgment. In *Vogt v. Board of Commissioners of the Orleans Levee District*, the district court held that the Levee District's failure to pay a state court judgment awarding just compensation for a taking itself effected an unconstitutional taking that could be remedied via a Section 1983 action. No. 00–3195, 2002 WL 31748618, *4 (E.D. La. Dec. 5, 2002). In *Vogt*, this Court observed that the Levee District "has not satisfied the [state court] judgment, and the plaintiffs have been unsuccessful in securing any relief under Louisiana law." 2002 WL 31748618, at *4. The court concluded that "[i]t is evident that just compensation has been denied by the defendants, and, as such, a violation of the Fifth Amendment of the United States Constitution has occurred," and held that the landowner could properly seek relief under Section 1983 "for an 'uncompensated taking.'" *Id.* at *9.

The SWBNO's attempt to distinguish *Vogt* is unavailing. The SWBNO focuses on a portion of the Court's *dicta* at the end of the opinion. *See* (R. Doc. 13-1, at pp. 14-15).

> We do not hold or imply, as the levee board contends, that every tort or breach of contract claim against a governmental entity necessarily becomes a takings claim. Our holding extends **only to cases where**, as in *Webb's*, **the government has forcibly appropriated private property without a claim of right or of public or regulatory purpose.**

*Vogt*, 294 F.3d at 697. That commentary recognizes that state court judgments for just compensation are different than ordinary tort or breach of contract judgments, which distinguishes the other authorities the SWBNO relies upon.[1] *See* (R. Doc. 13-1, at p. 14). The SWBNO cites

---

[1] The SWBNO relies upon *Bennett v. City of New Orleans*, No. 03-912, 2004 WL 60316, at *1 (E.D. La. Jan. 9, 2004), which is a case involving a personal injury judgment. (R. Doc. 13-1, p. 14). Notably, *Bennett* expressly distinguished *Vogt*, because the *Vogt* plaintiffs had stated a "federal takings claim." *Id.* at *3; *see also Davis v. Cantrell*, 2018 WL 6169255, at *5, n.72 (E.D. La. Nov. 26, 2018) (explaining that "[t]he court in *Vogt* found a taking

the last sentence out of context.  Indeed, the Court began its discussion of this issue by explaining "[t]he only point requiring resolution at this stage" was whether the landowners' suit was a takings claim or merely an attempt to collect on a state court judgment.  *Id.*  The Court was not providing forward-looking guidance limiting parties' ability to pursue claims, as here, relating to uncompensated or undercompensated takings.  Like the *Vogt* plaintiffs, Plaintiffs' right to payment of just compensation did not evaporate upon entry of a final judgment quantifying their claims.

The same result should apply here.  The SWBNO violated Plaintiffs' Fifth and Fourteenth Amendment rights when it took Plaintiffs' properties, and it violated those rights once again when it failed to pay the compensation judgment issued to remedy the first constitutional violation.  Section 1983 is the proper vehicle to remedy those constitutional violations in federal court.

### D. Judge Lemelle's Unresolved Decision in *Violet Dock Port* is Not Binding on This Court and is Based Upon Inapplicable Case Law.

#### 1. A Decision by Another Section of Court is Not Binding Authority, Particularly When the Decision was Appealed & Never Resolved.

Defendant's Motion relies almost exclusively on a decision from another Section of this Court, authored by Judge Lemelle, *Violet Dock Port Inc., LLC v. Heaphy.,* 2019 WL 6307945 (E.D. La. Nov. 23, 2019).  What Defendants fail to disclose to the Court, however, is that *Violet Dock Port* was appealed to the Fifth Circuit Court of Appeals, but never resolved by that Court.

The plaintiff in *Violet Dock Port* appealed Judge Lemelle's decision to the Fifth Circuit Court of Appeals, which heard oral argument on September 2, 2020.  Following oral argument, the Fifth Circuit ordered the parties to participate in its mediation program, with a court-appointed

---

not because a state court judgment created a property right to payment, but because the public entity had taken other property rights that were at stake," *i.e.*, the mineral royalties that were quantified and liquidated in the judgment).

mediator, and to submit weekly status reports regarding the status of the defendant's payment. Shortly thereafter, the matter settled, and the appeal was dismissed.  Thus, the Fifth Circuit Court of Appeals never addressed the correctness of the district court's dismissal or the application of *Knick*.

In addition, this Section of Court is not bound by another Section's ruling.  *See, e.g.*, *Bishop v. City of Galveston*, 2013 WL 960531, at *12 (S.D. Tex. Mar. 12, 2013) ("[T]his Court first notes it is not bound by another district court decision."  *Aff'd* 595 Fed. Appx. 372 (5th Cir. 2014); *see also Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) (explaining that a district court is not bound by another district court's decision nor opinions by other judges of the same district).  This is particularly important when, as is the case here, that the decision was appealed but never resolved by the appellate court.

### 2.     The District Court in *Violet Dock Port* Erred by Relying on Cases Involving Payment of Personal Injury Judgments, Rather Than Constitutional, Takings Judgments.

In *Violet Dock Port*, defendant St. Bernard Port, moved to dismiss Violet Dock Port's complaint under Fed. R. Civ. P. 12(b)(6).  Similar to Defendants herein, St. Bernard Port argued that the constitutional mandate to pay just compensation for the taking of property is "discretionary," and payment of a judgment awarding just compensation cannot be compelled by *any* court.  The district court granted St. Bernard Port's motion.

The district court, however, erred by relying upon inapplicable personal injury cases addressing the collectability of personal injury judgments rendered against governmental entities. *See Violet Dock Port*, 2019 WL 6307945, at *2.  These cases, which are distinguished below, are: *Minton v. St. Bernard Parish School Board*, 803 F.2d 129, 132 (5th Cir. 1986); *Guilbeau v. Parish of St. Landry*, 2008 WL 4948836, at *10 (W.D. La. Nov. 19, 2008), *aff'd*, 341 F. App'x 974 (5th

Cir. 2009); and *Davis v. Cantrell*, 2018 WL 6169255, at *5 (E.D. La. Nov. 26, 2018)).

In *Minton*, 803 F.2d 129, the plaintiff filed a Section 1983 suit asserting a wide variety of claims arising out of the School Board's refusal to pay a <u>tort judgment</u> for <u>personal injuries</u> caused by a school bus accident. The district court dismissed the plaintiff's suit for failure to state a claim. *Id.* at 130. This Court reversed and reinstated the suit, except for the plaintiff's due process claim. The Court held "that the property right created by a judgment against a government entity is not a right to payment at a particular time but merely the recognition of a continuing debt of that government entity." *Id.* at 132 (citing a 19th century case involving the collection of a tort judgment, *State of Louisiana ex rel. Folsom v. Mayor, Etc., of the City of New Orleans*, 109 U.S. 285 (1883)). Plaintiffs' rights herein, however, derive not simply from a judgment, but also from the Fifth Amendment's protection against property being taken without just compensation. The tort claims and judgments at issue in *Folsom* and *Minton* implicated no constitutional rights.

In *Guilbeau*, 2008 WL 4948836, the plaintiff sought payment of a judgment for <u>personal injuries</u> sustained on a negligently-maintained road. The defendant sought to dismiss the plaintiff's claims based upon La. R.S. 13:5109 and the language from *Minton* discussed above. The plaintiff responded that La. R.S. 13:5109(B)(2) was preempted by the Highway Safety Act of 1966, 23 U.S.C. § 402. The district court disagreed, finding the federal statute did not preempt state law. The district court, although finding the lack of payment to be "troubling," *id*. at *14, followed *Minton* and found that there was no right to mandate immediate payment of the judgment. *Id*. at *10.

*Davis,* 2018 WL 6169255, also involved the government's non-payment of a <u>tort judgment</u> for <u>personal injuries</u>. As in *Minton*, and unlike the present case, the court did not grant the defendant's motion to dismiss in its entirety. It found that the plaintiff was entitled to assert an

equal protection claim under the Fourteenth Amendment.  Regardless, *Davis* is entirety inapposite, because, as the court noted, the plaintiff did not seek to collect the judgment; rather, he challenged the manner in which the city had deviated from its ordinary procedure in paying judgments in the order they were rendered.  Citing *Minton* and *Freeman Decorating Co. v. Encuentro Las Americas Trade Corp*., 352 F. App'x 921, 924 (5th Cir. 2009) (which relied on both *State of Louisiana ex rel. Folsom* and *Minton*), the court found that the plaintiff had no right to payment of the personal injury at a particular time.  *Id*. at 11.  The court, however, explicitly noted that a federal court will enforce a state court judgment where, as here, a "federal interest is implicated."  *Id*.

All three of these cases relied upon by Judge Lemelle in *Violet Dock Port* are distinguishable from the present case.  These three cases involve purely tort, personal injury judgments, while, in the present case, the unpaid judgments award just compensation for constitutional takings, which implicate an overriding federal interest in enforcing the constitutional right to just compensation for takings.  Accordingly, *Violet Dock Port* should not be considered by this Court in reaching a decision on the present Motion.

### E.  Defendants Cite No Applicable Cases Justifying the SWBNO's Non-Payment of Plaintiffs' Just Compensation Judgments.

Defendants argue that there is no constitutional violation in failing to pay Plaintiffs' just compensation judgments because "there is no right to payment of a judgment at a particular time."  Defendants' argument fails, however, because it is based solely on federal case law distinguishable from the present matter.  <u>None</u> of the cases relied upon by Defendants to support their argument for non-payment involve the federal, constitutional interest of paying just compensation for a taking; rather, these cases involve purely state law tort and contract claims.  *Folsom*, *Minton*, *Guilbeau*, and *Davis* are addressed above in detail and clearly distinguishable in that all cases involve tort and breach of contract judgments.  Likewise, the other cases relied upon by Defendants

are similarly distinguishable. *Bennett v. City of New Orleans*, 2004 WL 60316 (E.D. La. Jan. 9, 2004), and *Benson v. Regional Transit Authority*, 2015 WL 5321685 (E.D. La. Sept. 10, 2011), both involve personal injury judgments. *Freeman Decorating Co. v. Encuentro Las Americas Trade,* 352 F. App'x 921, 924 (5th Cir. 2009), involved a breach of contract judgment. <u>Defendants have not cited a single case in support that involves a judgment for a constitutional takings claim and awards just compensation.</u>

## IV. State Law Does Not Immunize the SWBNO from its Constitutional Obligation to Pay Plaintiffs' Just Compensation Judgments.

### A. La. R.S. 13:5109(B)(2) Does Not Immunize the SWBNO from Payment of Plaintiffs' Just Compensation Judgments.

Defendants argue that courts are powerless to require the SWBNO to pay just compensation, because, under the Louisiana Constitution and La. R.S. 13:5109(B)(2), "a judgment against a political subdivision shall only be payable out of funds appropriated for that purpose by the political subdivision." (R. Doc. 13-1, p. 15). To the contrary, as Plaintiffs make clear in their Complaint, La. R.S. 13:5109(B)(2) does <u>not</u> apply to the SWBNO, <u>nor</u> does it prohibit collection of an expropriation judgment.

The SWBNO is a political subdivision—it is not a State agency. La. R.S. 33:4071. Unlike some state agencies, the SWBNO's operating budget is not solely dependent upon State appropriations. Rather, the SWBNO's operations are principally self-funded. *See, e.g.*, La. R.S. 33:4121 (establishing the SWBNO's rate-setting authority). The SWBNO generates its own revenue from the use of its services (including Plaintiffs) from the levying of *ad valorem* taxes, the issuance of bonds, and receipt of governmental grants and aid. La. R.S. 33:4083 *et seq*.

La. R.S. 13:5109(B)(2) does not apply to the SWBNO's payment of an expropriation judgment. The more specific statute, La. R.S. 33:4078, provides, *inter alia*, the SWBNO with the

authority to expropriate land, "[w]henever it becomes necessary to expropriate any property convenient or necessary."  In other words, the SWBNO need not specifically appropriate funds to pay for property it expropriates.  Thus, the SWBNO is freed from any requirement that it must make a specific appropriation of funds or include in its budget funds necessary to pay just compensation for expropriated property.

Regardless, the SWBNO's construction of La. R.S. 33:5109(B)(2) is erroneous and would render the statute unconstitutional.  No state statute can immunize the SWBNO from the constitutional, categorical mandate of payment of just compensation for its expropriation of property.  The just compensation clause "may not be evaded or impaired by any form of legislation."  *Baltimore & Ohio R. Co. v. United States*, 298 U.S. 349 (1935)).  Thus, even if applicable, La. R.S. 33:5109(B)(2) cannot stand for the proposition that the SWBNO does not have to pay the exigible judgment against it in virtual perpetuity.  Here, where the SWBNO has valid judgments against it for inverse condemnation and a budget surplus, yet the SWBNO continues to refuse to pay the judgments or provide any reasonable timeline therefor—with the exception of the ludicrous implication that the SWBNO has thirty (30) years to pay its debt—it is clear that the SWBNO has no intention of satisfying the underlying judgments.

In short, the just compensation award in this case is not payable, as the SWBNO argues, "only out of funds appropriated for that purpose."  (R. Doc. 13-1, p. 15).  Because Plaintiffs are constitutionally entitled to payment of just compensation, La. Const. art. XII, section 10(C) and La. R.S. 13:5109(B)(2) do not shield the SWBNO from payment for property it effectively expropriated by inverse condemnation.

**B.      Louisiana State Courts Have Rejected Defendants' Argument that the SWBNO's Obligation to Pay Just Compensation is Discretionary.**

Under Louisiana law, takings judgments are treated differently from tort and breach of

contract judgments.  *See*, e.g., *Jazz Casino Co., L.L.C. v. Bridges*, 2016-1663 (La. 5/3/17), 223 So.3d 488; *Parish of St. Charles v. R.H. Creager, Inc.*, 10–180 (La. App. 5 Cir. 12/14/10), 55 So.3d 884, writ denied, 2011–0118 (La. 4/1/11), 60 So.3d 1250.  Defendants omit the mention of several Louisiana state court decisions, including one from the Louisiana Supreme Court, that distinguish judgments in takings cases from tort judgments and hold that the constitutional duty to pay just compensation for the taking of property is not discretionary.  *See*, e.g., *Jazz Casino*, 223 So.3d 488; *R.H. Creager, Inc.*, 55 So.3d 884.

For example, in *Parish of St. Charles v. R.H. Creager, Inc.*, the Parish argued, as Defendants do here, that it could not be compelled to pay an expropriation judgment "unless the money for payment of the judgment has been specifically allocated."  55 So.3d 884, 891.  The court explicitly rejected this argument, holding that the trial court erred "by failing to consider that this matter does not involve a money judgment obtained against the Parish as the result of an action brought against the Parish in a tort or contract action;" rather, it "results from an action taken pursuant to the Parish's power of eminent domain."  *Id.* at 890.  The court concluded that this distinction "requires a different analysis and outcome."  *Id.*

Similarly, following *Creager*, the Louisiana Supreme Court in *Jazz Casino Co., L.L.C. v. Bridges*, likened the claimant's right to payment of a tax refund judgment to a right to payment of an expropriation judgment, holding that payment of both types of judgments were not discretionary but instead were ministerial and required by law.  2016-1663 (La. 5/3/17), 223 So.3d 488.  The Court explained that, while the power of expropriation is "inherent in the police power of the state," it "implicates constitutional concerns involving the deprivation of property."  *Id.* at 495, 497.  The same constitutional provision that affords a public body the right "to exercise its police power compels the public body to pay just and fair compensation and to afford constitutional due

process rights to citizens affected." *Id.* at 495 (quoting *Parish of St. Charles,* 55 So. 3d at 891). Consequently, the Louisiana Supreme Court in *Jazz Casino* found that, like the duty to pay just compensation judgments, the judiciary has the "constitutional authority" to compel payment of a final judgment. *Id.* (citing *Parish of St. Charles*, 55 So.3d at 892).

Accordingly, pursuant to these cases, the SWBNO is constitutionally mandated to compensate Plaintiffs for their just compensation damages.

### C.    The Louisiana State Law Cases Cited by Defendants Do Not Involve Takings of Private Property.

Like the federal cases cited by Defendants, the state court cases cited to support their argument for the SWBNO's non-payment of Plaintiffs' judgments do not involve the taking of private property, and thus, are inapplicable to the present case. Indeed, Louisiana's statutes regarding payment of judgments do not trump the constitutional requirement of payment of just compensation for expropriated property.

Defendants cite *Newman Marchive Partnership, Inc. v. City of Shreveport*, 2007-1890 (La. 4/8/08); 979 So.2d 1262, 1267, in which the court found that a state court could not, through a writ of mandamus, compel a political subdivision to pay a judgment rendered against it in a breach of construction contract case when that subdivision had not appropriated funds to pay the judgment. In that instance, the Louisiana Supreme Court recognized that their holding effectively provided Newman "a right without a remedy." *Id.* at 1270. In contrast, in the present case, a takings case, the Louisiana and United States constitutions both provide Plaintiffs with a remedy for payment of just compensation.

Notably omitted from Defendants' discussion of the *Newman* case, is the fact that, after the Louisiana Supreme Court rendered the judgment in *Newman*, the plaintiff then proceeded to federal court and filed a Section 1983 claim, asserting equal protection and retaliation claims

arising out of the failure to pay.  *See Newman Marchive Partnership, Inc. v. Hightower*, 735 F.Supp.2d 483 (W.D. La. 2010).  The federal court ruled in the plaintiff's favor on his retaliation claims and on one of his equal protection claims and held the defendant liable for additional damages, finding that, "[u]nder the laws of the United States, this court finds that Newman is entitled to a remedy for the constitutional violations noted herein."  *Id*. at 503, n. 27.

Defendants also fail to disclose to the Court other cases in which their arguments were rejected post-*Newman*.  Mostly recently, the Louisiana Supreme Court in *Lowther v. Town of Bastrop* rejected substantially similar arguments, holding that "[m]andamus may lie against a political subdivision when the duty to be compelled is ministerial and not discretionary," and noting that "appropriation of funds to pay judgment of damages in expropriation case[s] is a ministerial duty because the expropriation statutes and La. Const. art. I, § 4(B) make payment of fair and just compensation mandatory and not discretionary."  2020-01231, 2021 WL 1920977 at *3 (La. 5/13/21) (citing *Creager*, 55 So.3d at 892-93)).  The Louisiana Supreme Court found that, because the duty to pay the money judgement therein was constitutionally mandated, it was ministerial, and therefore, the petitioner had a valid cause of action to enforce the money judgment against the political subdivision.  *Id.*  The Court explicitly rejected the political subdivision's reliance on *Newman*.  *Id.* ("[W]e distinguished the mandatory nature of paying judgments for tax overpayment refunds and expropriation compensation from the discretionary nature of paying judgments arising from matters of contract or tort.").  Thus, just as was the case in *Lowther*, in the present case, "*Newman* is distinguishable because the judgment therein adjudicated a breach of contract claim."  *Id.*

Defendants' attempt to reclassify Plaintiffs' claims as lying in tort offers no saving grace. *See Mathis v. City of DeRidder*, 599 So. 2d 378, 383-84 (La. Ct. App. 1992) ("[W]here a public

18

body with expropriation power takes or damages private property for public purposes without expropriation proceedings, it is said to have acquired the property by appropriation and it owes just compensation to the owner . . . . Such a suit is sometimes referred to and described as one of 'inverse condemnation' and is not considered a tort action.") (emphasis added).  As in *Lowther*, "[t]he ministerial nature of the duty of the [SWBNO] to pay the [Plaintiffs] does not change to a discretionary one simply because the [Plaintiffs] obtained a monetary judgment confirming and quantifying the [SWBNO's] payment obligation."  *Lowther*, 2021 WL 1920977 at *4.  To hold otherwise would allow the SWBNO to skirt its obligation, under both the Louisiana and U.S. constitutions, "'under the guise that … compelling performance of these ministerial duties violates,' in this particular case, the Full Faith and Credit" statute.  *See id.*

## V.    Plaintiffs Have Stated a Valid Claim Against Ghassan Korban, in his Capacity as Executive Director of the SWBNO.

Plaintiffs are not pursuing a claim against Mr. Korban, personally, for just compensation. Defendants do not dispute that a Section 1983 claim may be brough against an individual in their individual capacity.  (R. Doc. 13-1, p. 20).  Indeed, as is the case here, an official capacity suit against a state official for injunctive relief is permissible.  *Mothe v. Louisiana State Bd. Embalmers & Funeral Directors*, 2020 WL 1139855, at *2 (E.D. La. Mar. 9, 2020).  Accordingly, Korban is named in his official capacity to the extent that he is the Executive Director of the SWBNO and would effectuate the SWBNO's payment of Plaintiffs' just compensation judgments.

## VI.    Plaintiffs' Declaratory Relief Claims are Ripe for Determination.

Defendants' assertion that Plaintiffs' declaratory relief claims are not ripe is without merit. As Defendants readily acknowledge, a case is ripe for a declaratory judgment when an actual controversy exists between two parties with adverse legal interests and sufficient immediacy and reality.  *Orix Credit All., Inc. v. Wolfe*, 2121 F.3d 891, 896 (5th Cir. 2000).  In the same breath,

Defendants assert that no controversy exists, because Plaintiffs have had their judgment for "six to seven months," but then imply they have no obligation to honor their constitutional obligations within a "reasonable amount of time."  (R. Doc. 13-1, p. 25).  This absurd assertion that the SWBNO is under no obligation to make payment within a "reasonable amount of time" also belies the SWBNO's claim that there has been no "outright refusal."  *Id.* at 15.

Defendants also ostensibly confuse Plaintiffs' burden for their own.  On a motion to dismiss, well-pleaded factual allegations are accepted as true, and the assertion that the SWBNO has refused to honor the judgments in favor of Plaintiffs is not only a well-pleaded fact, it is <u>uncontested</u>.  *See Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) ("[A] complaint need not contain 'detailed factual allegations'; rather, it need only allege facts sufficient to 'state a claim for relief that is plausible on its face.'").  Certainly, it is plausible that the SWBNO refuses to honor the judgments where it: (1) does not challenge that assertion factually, (2) has surplus funds to honor the judgments but has not done so, (3) argues it need not pay in a "reasonable amount of time," and (4) erroneously implies that it has thirty (30) years to make any payment.

**VII.  This Honorable Court is Fully Capable of Giving Full Faith and Credit to the State Court Judgments and Adjudicating Plaintiffs' Claims.**

In clear contradiction with the U.S. Supreme Court, Defendants make the dubious claim that "*Knick* . . . upheld the rule that a state court's resolution of a just compensation claim has a preclusive effect in a subsequent federal suit." (R. Doc. 13-1, p. 22).  In fact, to the contrary, *Knick* was largely grounded in the unintended "preclusive effect" caused by the state-exhaustion problem, "*because* the full faith and credit statute required the federal court to give preclusive effect to the state court's decision."  *Knick*, 204 L. Ed. 2d 558.

20

The dissent in *Knick* attempted an analogous argument to the SWBNO's, which was rejected by the majority.   According to the *Knick* majority, its ruling does not "expose government to new liability; it will simply allow into federal court takings claims that otherwise would have been brought as inverse condemnation suits in state court."  *Id.*  The rule of the case confirms this: "A property owner may bring a takings claim under § 1983 upon the taking of his property without just compensation by a local government."  *Id.*  It should thus be axiomatic that, as here, where the damage is already done, no compensation is provided, a judgment is rendered and exigible, but the government nevertheless refuses to shoulder the constitutional obligation to compensate the very taxpayers the political subdivision ostensibly serves, the controversy is so far beyond "ripe" as to border on moldy.

Moreover, the very fact that Plaintiffs assert the underlying judgments are "final and unappealable" (R. Doc. 1, at pp. 14-19), eviscerates Defendants' ludicrous claim that Plaintiffs merely seek to "relitigate their underlying claims" in federal court.  Rather, Plaintiffs aver that the SWBNO's attempt to abuse the gap in federal and state jurisprudence as an effectively perpetual bar to Plaintiffs' recovery constitutes, in and of itself, a taking.  Under the Full Faith and Credit Act, this Honorable Court should indeed "honor the state court judgments," as the SWBNO requests, but by <u>rejecting</u> its unconstitutional attempts to exploit what it perceives as legal loopholes to escape its financial and constitutional obligations.  As the concurrence in *Knick* elucidates, the Takings Clause envisions government compensation *before* the taking, and the SWBNO should not be able to skirt the spirit of that tradition just because its "taking" was by virtue of inverse condemnation, and therefore beyond the scope of ordinary expropriation proceedings.

**VIII.** **Although Plaintiffs Believe They Have Adequately Pled Their Claims, Plaintiffs Request Leave to Amend if this Court Deems its Pleadings to be Defective in any Manner.**

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). "As the numerous case[s]...make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected." 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2019); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (recognizing that district courts commonly "afford plaintiffs at least one opportunity to cure pleading deficiencies"). Although Plaintiffs believe their Complaint states a viable claim under Section 1983, they respectfully request leave to amend if their pleadings are found to be deficient in any manner.

## CONCLUSION

Plaintiffs' Complaint sets forth a viable Section 1983 claim against Defendants. Defendants' Motion to Dismiss is the latest illustration of the SWBNO's unjustified denial of Plaintiffs' constitutional right to payment of just compensation. Because the SWBNO must pay for the private property it forcibly takes, Defendants' Motion to Dismiss should be denied.

*[The remainder of this page was intentionally left blank.]*

Respectfully submitted,

**Michael T. Whitaker (*Pro Hac Vice*)**
**Alexis A. Butler (La. Bar #32376)**
**The Whitaker Law Firm, APC**
201 St. Charles Avenue, Suite 2500
New Orleans, Louisiana 70170
Telephone: (504) 313-0168
lexybutler@whitakerlaw.net

-AND-

**BRUNO & BRUNO**
**Joseph. M. Bruno (La. Bar #3604)**
**Daniel A. Meyer (La. Bar #33278)**
**Bruno & Bruno**
855 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-1335

Counsel for Plaintiffs, George and Beth Duessing, David Epstein, Faye Lieder, Thomas Ryan, Judith Jurisich, Dorothy White, Arlen Brunson, Kristina and Brett Dupre, Gail Marie Hatcher, Betty Price, Bojan Ristic, Patsy Searcy, Helen Green, Theada Thompson, Kim Alvarez and Allan Basik, John, Jr. and Jill Bossier, David Engles, Estate of Louise Stewart, Cathleen Hightower, Ruth and Leon Hinson, Margaret and Harry Leche, George Mouledoux, Elizabeth and William Sewell, Patricia Wynn, Geraldine Baloney, Abbrica Callaghan, Burnell Cotlon, Eirinn Erny and Gregory Kozlowski, Larry Hameen, Noella Hayes, Stephen Hogan and Fransisca Medina Hogan, Keeba and Gaylin McAllister, Cody Myers, and Heather Weathers

**SMITH & FAWER, LLC**

*/s Randall A. Smith*
**Randall A. Smith (La. Bar #2117)**
**Mary Nell Bennett (La. Bar #32339)**
**Sarah A. Lowman (La. Bar #18311)**
**Smith & Fawer, LLC**
201 St. Charles Ave., Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
rasmith@smithfawer.com
mnbennett@smithfawer.com
salowman@smithfawer.com

Counsel for Plaintiffs, Ariyan, Inc. d/b/a Discount Corner, M. Langenstein & Sons, Inc., Prytania Liquor Store, Inc., West Prytania, Inc. d/b/a Prytania Mail Service/Barbara West, British Antiques, L.L.C./Bennet Powell, Fine Arts Management, L.L.C. D/B/A Prytania Theatre, Superior Seafood and Oyster Bar, L.L.C., The Magic Box, Ltd. d/b/a Magic Box Toys, Mark Defelice, Savare Defelice, Jr., Esteff Defelice, and Virginia Defelice, all on behalf of the entity f/k/a Pascal-Manale Restaurant Inc., Elio, Charlotte, and Benito Brancaforte, Dr. Josephine S. Brown, Richard Parke Ellis, Nancy Ellis, Mark Hamrick, Dr. Robert and Charlotte Link, Ross and Laurel McDiarmid, Jerry Osborne, Jack Stolier, Dr. William B. Taylor, III, Watson Memorial Spiritual Temple of Christ d/b/a Watson Memorial Teaching Ministries, Thomas and Judith Lowenburg, John and Lori Ochsner, Ronald Ruiz, Anne Lowenburg, Sarah A. Lowman, Barbara H. West, Nanette Colomb, Mary and Clay Kearney, Michael T. Gray, Mark and Anna Kurt, The American Insurance Company (as subrogee of Mark and Anna Kurt), Virginia Carter Stevens Molony, Dat Dog Enterprises, LLC, Dat Dog Properties, LLC, Superior Bar & Grill, Inc., The Fresh Market, Inc., K&B Corporation d/b/a Rite Aid Corporation, And 1900 & 1901 Collin, L.L.C.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of June 2021, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all parties.

*/s Randall A. Smith_____*