# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIZABETH SEWELL, ET AL.,** ) | |
| ) | |
| **Plaintiffs** ) | **CIVIL ACTION NO. 17-8128** |
| **VERSUS** ) | |
| ) | |
| **SEWERAGE & WATER BOARD OF** ) | **SECTION "N" (3)** |
| **NEW ORLEANS,** ) | |
| **Defendant** ) | |
| ) | |

## PLAINTIFFS' MOTION TO SEVER & REMAND

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Elizabeth Sewell, *et al.*, who pursuant to 28 U.S.C. §§ 1367(c), 1447(c) and Federal Rules of Civil Procedure 14(a)(4) and 21, file this Motion to Sever and Remand. As set forth in the accompanying Memorandum in Support, Plaintiffs have set forth legal and factual bases for this Court to decline to exercise supplemental jurisdiction over Plaintiffs' claims against the Defendant Sewerage and Water Board of New Orleans ("SWB"), sever Plaintiffs' claims against the SWB from the SWB's third party claims against the Contractors, and remand Plaintiffs' claims against the SWB to state court. Thus, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion.

Respectfully submitted:

**BRUNO & BRUNO, LLP**

Joseph M. Bruno (La. Bar No. 3604)
Daniel A. Meyer (La. Bar No. 33278)
855 Baronne Street
New Orleans, LA 70112
Telephone: (504) 525-1335
Fax: (504) 581-1493

jbruno@brunobrunolaw.com
dmeyer@brunobrunolaw.com

AND

**THE WHITAKER LAW FIRM, APC**

Michael T. Whitaker (*Pro Hac Vice*)
100 Dolores Street
Carmel, CA 93923
Telephone: (831) 624-5556
Fax: (831) 624-5509
michaelwhitaker@whitakerlaw.net

  */s/ Alexis A. Butler*
Alexis A. Butler (La. Bar. No. 32376)
201 St. Charles Ave.
Suite 2500
New Orleans, LA 70170
Telephone: (504) 313-0168
Fax: (831) 624-5509
Email: lexybutler@whitakerlaw.net

ATTORNEYS FOR PLAINTIFFS


<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 29th day of August 2017, I served a copy of the foregoing on

all counsel of record by filing through the Court's CMECF e-filing system.


  */s/  Alexis A. Butler*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIZABETH SEWELL, ET AL.,** ) | |
| ) | |
| **Plaintiffs** ) | **CIVIL ACTION NO. 17-8128** |
| **VERSUS** ) | |
| ) | |
| **SEWERAGE & WATER BOARD OF** ) | |
| **NEW ORLEANS,** ) | **SECTION "N" (3)** |
| **Defendant** ) | |
| ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO SEVER & REMAND

MAY IT PLEASE THE COURT:

Plaintiffs, Elizabeth Sewell, *et al*., ("Plaintiffs"), respectfully submit this Memorandum in Support of their Motion to Sever and Remand. For the following reasons, the Court should: (1) decline to exercise supplemental jurisdiction over Plaintiffs' claims against the Defendant Sewerage and Water Board of New Orleans ("SWB"), (2) sever these claims from the SWB's third party claims against the Contractors (*i.e.*, Cajun Constructors, LLC, B&K Construction Co., LLC, and Boh Bros. Construction Co., LLC), and (3) for the second time, remand the claims back to state court where Plaintiffs originally filed their claims against the SWB well over two years ago, so that Plaintiffs may finally have their day in Court after years of suffering in properties damaged by the SWB's SELA Project.

## I.    SUMMARY OF ARGUMENT

The Court should decline to exercise supplemental jurisdiction over Plaintiffs' claims against the SWB and sever and remand these claims to state court, as the SWB should not be permitted to impose further delay and prejudice to Plaintiffs by alleging already-dismissed

claims against the Contractors, claims that are certain to result in a pattern of removal, remand, and removal between federal and state courts.

Plaintiffs' numerous state law constitutional and tort claims are independent of the SWB's third party claims arising from contractual obligations, and as the history of this case proves, each set of claims can be resolved without reliance on common legal or factual issues. As further proof that Plaintiffs' claims should proceed independently of the SWB's third party claims, the third party claims have already been dismissed and will be dismissed again, leaving no legitimate basis for federal jurisdiction and no reason for Plaintiffs to litigate their claims alongside the third party claims.

Fairness is served by granting this Motion, as Plaintiffs have waited well over two years to have their day in court and should not be deprived of the January 2018 trial setting in state court. Judicial economy is served too because granting this Motion will prevent the further and unnecessary expenditure of resources by the Court, followed by the inevitable remand to state court.

Finally, the SWB should not be permitted to manipulate the forum for Plaintiffs' claims by continually re-alleging meritless claims against the Contractors, and the granting of this Motion will ensure that the SWB's third party claims pose no further prejudice or delay to Plaintiffs in this litigation.

## II.        FACTUAL & PROCEDURAL BACKGROUND

### A.      Factual Background

The Court is undoubtedly aware of the factual allegations and background of this case, thus Plaintiffs will only provide a quick summary on the relevant information. Plaintiffs' claims against the SWB arise from the significant damages wreaked to properties located in the

"Uptown" neighborhood of New Orleans, as a result of the construction of the SWB's Southeast Louisiana Urban Drainage Project ("SELA Project" or "Project").  Plaintiffs are comprised of almost 250 homeowners and business owners who have been damaged by the SWB's Project.

The SELA Project is a joint local-federal project administered and funded by the SWB and the U.S. Army Corps of Engineers (the "Corps"), with the stated purpose of addressing severe rainfall and resultant flooding in the New Orleans area.  Pursuant to various agreements between the SWB and Corps, the SWB acts as the "local sponsor" of the SELA Project and in this role: (1) provides 35% of the funding for the Project, (2) is responsible for the design of the Project, (3) is involved in the administration and construction of the Project, and (4) is required to resolve property damage claims caused by the Project.  The SWB and the Corps hired the Contractors to carryout a significant portion of the construction of the Project.

The current phases of the SELA Project involve years-long construction on the major avenues of the Uptown neighborhood – namely, South Claiborne, Jefferson, Napoleon, and Louisiana.  The Project adversely affects Plaintiffs' properties in the Uptown areas adjacent to and nearby the construction and construction-related activities.   Some Plaintiffs have experienced the damages and disturbances of the SELA Project construction since as far back as 2011 and many, if not all, continue to suffer to date as a result of the Project.

        B.      <u>Procedural Background</u>

*1. Plaintiffs' Claims Filed in State Court*

Well over two years ago, in May 2015, Plaintiffs filed the original Petition against the SWB in state court, the Civil District Court for the Parish of Orleans, alleging ongoing property and related damages caused by the SELA Project.  (R. Doc. 1-2, Case No. 15-3117).  These

claims raised purely state law claims of inverse condemnation, strict liability, and negligence. *Id.*

In response to Plaintiffs' claims, the SWB brought third party claims against the Contractors, alleging indemnification, subrogation, and breach of contract.  (R. Doc. 1-3, Case No. 15-3117).  Plaintiffs never filed claims against the Contractors because the SWB is the sole government entity liable to Plaintiffs for SELA Project damages and because the Contractors enjoy immunity from such claims as federal contractors.  Plaintiffs easily reached these conclusions based upon the SWB's contractual obligations for the Project and the legal precedent of *Holzenthal v. Sewerage and Water Board of New Orleans*, 950 So. 2d 55 (La. App. 4th Cir. 1/10/07), and *Shimon v. Sewerage and Water Board of New Orleans*, 2010 WL 2696970 (E.D. La. July 1, 2010).  Despite the SWB's extensive experience with prior SELA Project litigation and contrary to the very contracts it signed for the SELA Project, the SWB continues to attempt to impose liability on the Contractors for SELA Project damages.

## 2.  *The First Removal of the Case*

Because of the federal contractor immunity defense raised by the SWB's third party claims against the Contractors, in July 2015, the Contractors removed the case, including Plaintiffs' claims against the SWB to this federal Court, the U.S. District Court for the Eastern District of Louisiana ("Federal Court").  (R. Doc. 1, Case No. 15-3117).  When the case was removed for the first time to this Court, Plaintiffs immediately filed a motion to sever and remand.  (R. Doc. 7, Case No. 15-3117).  The motion was denied, and Plaintiffs were forced to litigate their claims alongside the SWB's third party claims against the Contractors, causing delay and distraction from resolving the Plaintiffs' claims.

This Court issued the Discovery Scheduling Order ("DSO") to govern expedited discovery, mediations, and pretrial deadlines.  (R. Doc. 156, Case No. 15-3117).  The Court also set a trial of Plaintiffs' claims for June 2016.  (R. Doc. 128, Case No. 15-3117).  Recognizing the distinction between the Plaintiffs' claims and the SWB's third party claims, this Court ordered that each type of claim proceed on a separate discovery tract.  (R. Doc. 156, Case No. 15-3117).  Under the DSO, the Plaintiffs and SWB proceeded with discovery in groups of 20 Plaintiffs at a time and made significant progress in exchanging written discovery, conducting home inspections, preparing expert reports, and taking depositions.  The DSO also ordered mediation of Plaintiffs' claims in these same groups of 20, with the first mediation scheduled to take place in December 2016. *Id.*

At the same time, the SWB and Contractors engaged in extensive discovery, including written discovery totaling tens of thousands of pages and numerous days of depositions, in preparation for addressing the Contractors' immunity defense.  The SWB and Contractors submitted lengthy briefing and participated in multiple oral arguments before this Court.  After numerous months of litigating the federal contractor immunity defense, on December 21, 2016, this Court issued its written Order & Reasons, granting the Contractors' motions for summary judgment on the federal contractor immunity defense and dismissing the SWB's third party claims against the Contractors with prejudice.  (R. Doc. 397, Case No. 15-3117).

Thereafter, this Court issued a final Judgment, (R. Doc. 403, Case No. 15-3117), and the SWB appealed the Court's ruling to the U.S. Court of Appeals for the Fifth Circuit.  The SWB and Contractors have submitted appellate briefing to the Fifth Circuit.  On August 28, 2017, the Fifth Circuit issued its decision affirming this Court's dismissal of the SWB's third party claims against the Contractors.  (R. Doc. 00514135655, U.S. 5th Cir. Ct. App. Case No. 17-30089).

### 3.  Remand of the Case

On January 5, 2017, the Federal Court remanded the remaining claims – that is, Plaintiffs' claims against the SWB – to state court.  (R. Doc. 405, Case No. 15-3117).  Plaintiffs sought to remain in this Court because of the momentum created by the Court's DSO.  Plaintiffs' concerns about losing momentum were realized when the Court remanded Plaintiffs' claims back to state court prior to trial and before mediation could be enforced against the SWB, which unilaterally cancelled the first mediation at the last minute.  If the case had remained in this Court, then at least mediation would have been attempted and possibly successful, but if not, the first trial of Plaintiffs claims would already have been completed and, Plaintiffs reasonably believe, the SWB would have been ordered to provide the long-awaited financial relief to those trial Plaintiffs and a path would have been paved for resolution of Plaintiffs' claims on a global basis.

Once Plaintiffs' claims were back in state court, Plaintiffs had to wait almost six months for a judicial assignment following judicial election and runoff.  Thereafter, fortunately, Plaintiffs' claims against the SWB were back on track to proceed towards resolution.  The first trial of five Plaintiffs' claims was set for January 8, 2018, and pursuant the Case Management Order ("CMO") issued by the state court, the Plaintiffs produced discovery responses and issued discovery requests, subpoenas, and notices of depositions.  Just last week, Plaintiffs submitted their expert reports.

In November 2016, while this case was still in this Court, Plaintiffs filed a motion to amend the complaint to simply add additional named-plaintiffs, and no new legal claims, but the Court did not resolve this motion prior to remand.  (R. Doc. 358, Case No. 15-3117).  Accordingly, once the case was remanded, Plaintiffs re-filed this motion in state court, which

was granted, and the Fourth Supplemental and Amending Petition was filed into the Court record.  (R. Doc. 1-1).  In response, the SWB filed its Answer and Third Party Demand to the Fourth Supplemental and Amending Petition.  (R. Doc. 1-2).

The SWB's Third Party Demand contains no viable claims against the Contractors who, as this Court and now the Fifth Circuit have determined, enjoy immunity from the SWB's claims.  The SWB erroneously bases these claims on its belief that this Court's dismissal of the Contractors only applies to damages sustained by the Plaintiffs through June 16, 2016, the date of Plaintiffs' Third Amended and Supplemental Complaint.  *Id*. at p. 14.  This Court's Order & Reasons placed no temporal limitations on its ruling that the Contractors were immune to the SWB's claims.  (R. Doc. 397, Case No. 15-3117).

Since the Plaintiffs' Original Petition against the SWB, the Plaintiffs have alleged continuing violations of constitutional and tort laws, as well as continuing damages caused by the SWB's SELA Project.  *See* (R. Doc. 1-1).  At no time have Plaintiffs alleged a specific date on which they sustained damages or when their damages ceased to exist.  *See id*.  Even if Plaintiffs had alleged a specific date on which they suffered damages (which Plaintiffs do not), any such date is irrelevant to whether the Contractors enjoy immunity from the SWB's contractual, indemnity, and subrogation claims.  Thus, it appears that the SWB is utilizing its newest third party claims simply as a delay strategy, as it was certain that the Contractors would remove the case to this Court after the SWB raised the claims, whether the claims are viable or not, in an effort to obtain a duplicate ruling from this Court on federal contractor immunity.

### 4.  *The Second Removal of the Case*

In an effort to avoid another removal and thus, delay of discovery, motion practice, and trial, Plaintiffs quickly contacted counsel for the Contractors and asked that they wait to file

removal papers until Plaintiffs could file a motion to sever in state court.  Plaintiffs immediately filed their motion for severance in state court and moved for and were granted an expedited hearing by the state court in order to accommodate the Contractors' removal deadline. Unfortunately, the Contractors decided to move forward with removal prior to the hearing on Plaintiffs' motion to sever, and Plaintiffs' claims were removed to this Court, along with the SWB's third party claims, for a second time on August 22, 2017.  (R. Doc. 1).  The state court has agreed, in light of this removal and Plaintiffs' challenge to removal, to hold the January 2018 trial date until resolution of the present Motion.

The procedural history of this case demonstrates that removal of Plaintiffs' claims along with the SWB's third party claims poses serious delay and prejudice to Plaintiffs in obtaining relief from the SWB.  Given that this Court has already ruled, after extensive discovery, briefing, and hearings, that the Contractors enjoy federal immunity from the SWB's Third Party Claims, and the Fifth Circuit affirmed this ruling on appeal, it is evident that the SWB's strategy is purely to delay resolution of Plaintiffs' claims and potentially to try to get a second bite at the apple on the federal contractor immunity defense.

Plaintiffs attempted to avoid this removal and the resultant delay and prejudice that has and will result therefrom, but Plaintiffs' efforts failed and now Plaintiffs ask this Court to decline to exercise supplemental jurisdiction over Plaintiffs' purely state law claims, and sever and remand these claims back to state court so that Plaintiffs, after years of delay, may finally have their claims tried at the January 2018 trial set by the state court.

### III. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' CLAIMS & SEVER & REMAND THESE CLAIMS

#### A. The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiffs' Claims

#### 1.   Law on Supplemental Jurisdiction

The Contractors removed this case pursuant to 28 U.S.C. § 1442(a)(1), which confers jurisdiction over claims against the federal government, including contractors with the federal government.  It is undisputed that Plaintiffs' purely state law claims against the SWB, a local state entity, do not give rise to federal jurisdiction; only the SWB's third party claims against the Contractors contain a basis for federal jurisdiction.

Thus, the only possible basis for the Court's jurisdiction over Plaintiffs' claims against the SWB is the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).[1]  However, and critical to the present Motion, Section 1367, subsection (c) allows a district court to "decline to exercise supplemental jurisdiction over a claim" where:

> (1) the claim raises a novel or complex issue of State law;
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

This Court previously determined that "§ 1367(c) grants the district court the discretion to decline supplemental jurisdiction if it determines that one of the four enumerated circumstances are present."  *See Crocker v. Borden, Inc.,* 852 F.Supp. 1322, 1328 (E.D. La. 1994).  In reaching a decision on supplemental jurisdiction, the district court "shall bear in mind the considerations of judicial economy, convenience, and fairness to the litigants…."  *Id.* at 1329; *see also Enochs v. Lampasas Cnty.,* 641 F.3d 155, 159 (5th Cir. 2011); *Shimon v. Sewerage & Water Bd. of New Orleans*, 2007 WL 4414709, at *2 (E.D. La. Dec. 14, 2007).

---

[1] Plaintiffs do not concede the Court has subject matter jurisdiction over their claims against the SWB and reserve the right to challenge jurisdiction.

" 'If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case.' "  *Target Strike, Inc. v Marston & Marston, Inc*., 2011 WL 2618609, at *5 (W.D. Tex. June 30, 2011) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ).

In *Crocker v. Borden, Inc*., 852 F.Supp. 1322, this Court previously addressed whether it should exercise supplemental jurisdiction over state law claims in in the principal demand when the case was removed based upon federal officer removal jurisdiction arising from the third party claims.   In considering the factors under Section 1367(c), the Court declined to exercise supplemental jurisdiction over the state law claims, severed these claims, and remanded the claims to state court.

In reaching its decision, the *Crocker* Court provided the following reasons:  (1) thousands of plaintiffs filed exclusively state law claims against the defendant in state court, (2) plaintiffs had pending trial dates in state court, (3) plaintiffs' claims had been pending for about three years, (4) if the cases were not remanded, trials would be significantly delayed, (5) none of the plaintiffs had asserted claims against the federal defendant or relative to the federal jurisdictional basis, (6) the state claims substantially predominated over the lone federal claim, (7) fairness to the litigants dictates remand for trial, (8) significant discovery on plaintiffs' claims had been conducted, and (9) the third party plaintiff would not be prejudiced by the severance because it still retained the right to pursue its third party claims.  *Id*. at 1329-31.

Consistent with *Crocker*, the district court in *Genusa v. Asbestos Corp., Ltd*., 18 F.Supp.3d 773, 776, 789 (M.D. La. 2014), declined to exercise supplemental jurisdiction over the plaintiff's main demands, which were originally brought in state court and only raised state

court claims, and severed and remanded plaintiff's claims from the third party claims that raised the lone federal claims in the case. The *Genusa* court noted that removal of the case occurred just months before the state court trial scheduled for plaintiff's state law claims.

Likewise, the district court in *Madden v. Able Supply Co*., 205 F.Supp.2d 695, 702-03 (S.D. Tex. 2002), declined to exercise supplemental jurisdiction over plaintiff's state law claims and severed and remanded these claims to state court where the plaintiff brought numerous state law claims and only a lone federal claim, the state law claims had been pending in state court for nearly two years, plaintiff elected to bring her claims in state court, the parties had spent considerable time and money preparing for a state court trial, and the state court trial setting was less than eight weeks away.

Most, if not all, of the same factors these courts used to justify declining supplemental jurisdiction are also present in this case and warrant declination of supplemental jurisdiction over Plaintiffs' claims against the SWB.

## 2. The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiffs' Claims

The Court may decline to exercise supplemental jurisdiction over Plaintiffs' claims when even a single factor for declination is present; here, at least four factors are present that warrant the Court's declination of supplemental jurisdiction over Plaintiffs' claims: (1) Plaintiffs' claims against the SWB substantially predominate over the SWB's third party claims against the Contractors; (2) the Court and the Fifth Circuit have already dismissed the only claims providing a basis for federal jurisdiction – the SWB's third party claims against the Contractors; (3) judicial economy and fairness to Plaintiffs are served by this Court's declination of supplemental jurisdiction; and (4) the SWB has manipulated the forum for Plaintiffs' claims by alleging third

party claims against the Contractors that the SWB knows are frivolous and have already been dismissed by the Court and the Fifth Circuit.

> **a.** **Plaintiffs' Claims Against the SWB Substantially Predominate Over the SWB's Third Party Claims Against the Contractors**

"A state claim substantially predominates if it 'constitutes the real body of a case, to which the federal claim is only an appendage.'" *Lang v. DirecTV, Inc.,* 735 F.Supp.2d 421, 428 (E.D. La. 2010) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 717, 727 (1966)). Substantial predominance in this context covers terms of proof, scope of issues raised, and comprehensiveness of remedies sought. *Id.*

As a matter of simple accounting, Plaintiffs' claims against the SWB substantially predominate over the SWB's third party claims. Plaintiffs are currently comprised of approximately 250 individuals and businesses that allege three separate, state law claims – inverse condemnation, strict liability, and negligence – against the SWB. Thus, as a rough estimate, the SWB is defending against 750 claims of Plaintiffs. In contrast, the SWB's third party claims against the Contractors involve three distinct legal claims – indemnification by law, contribution through subrogation, and breach of contract – against the three Contractors, or stated another way, a mere nine separate legal claims are at issue in the third party demand and these claims are the only claims that provide a basis for federal jurisdiction.

Furthermore, and as discussed in more detail below, Plaintiffs' claims against the SWB substantially predominate because the SWB's third party claims against the Contractors are not viable, as this Court has previously dismissed with prejudice the exact third party claims now before the Court a second time. Thus, under this view, Plaintiffs' claims number almost 750 individual claims, while the SWB has zero claims against the Contractors.

The SWB's third party claims against the Contractors can again be easily dismissed through motion practice before this Court. The discovery necessary to resolving the Contractors' federal contractor immunity defense has already been conducted and extensive briefing has already been submitted to and resolved by this Court.  Notably, the Fifth Circuit just affirmed this dismissal.  Thus, the "real body" of this case is the Plaintiffs' claims against the SWB, claims that are numerous and require significant time and resources to resolve.

While discovery for resolution of the SWB's third party claims against the Contractors is already complete and resolution of these claims are again ripe for review, hundreds of Plaintiffs' claims still have yet to be subjected to discovery, including but not limited to written discovery, depositions, and property inspections.  This discovery is entirely separate from the discovery already conducted for the SWB's third party claims.  The SWB's third party claims were resolved without reliance on any evidence from the Plaintiffs, including Plaintiff discovery, deposition testimony, or property inspections.  Thus, discovery and evidence for the direct claims and third party claims are not common or overlapping.

Likewise, while the SWB's third party claims have already been resolved by motion practice and undoubtedly will be again, the Plaintiffs have yet to have a single trial of their claims against the SWB.  Thus, over two years into this litigation, Plaintiffs and the SWB still face a multitude of trials of the hundreds of Plaintiffs' claims, while the third party claims were quickly and easily disposed of; this further demonstrates the lack of overlap and relatedness between the Plaintiffs' claims and the SWB's third party claims.

> **b.** **The Court has Already Dismissed the Only Claims Providing Federal Jurisdiction – the SWB's Third Party Claims Against the Contractors**

As this Court is well aware, it has already dismissed with prejudice the SWB's third party claims against the Contractors based upon federal contractor immunity, and the Fifth Circuit recently affirmed this dismissal.  When this dismissal occurred at the end of 2016, the Court then remanded the only remaining claims – Plaintiffs' claims against the SWB.  Thus, since the Court has already dismissed the only claims providing federal jurisdiction, and the Court is undoubtedly going to proceed in the same fashion with regard to the SWB's "new" third party claims against the Contractors, there will again be no basis for federal jurisdiction of this case.

Since the original Petition in this matter, Plaintiffs have alleged continuing tort damages against the SWB arising from the SELA Project; these allegations continued with Plaintiffs' most recent Fourth Amended and Supplemental Petition, which added 51 additional named-Plaintiffs to the case. The SWB's newest third party claims against the Contractors in response to this amendment are based on the SWB's mistaken belief that this Court's previous order dismissing claims against the Contractors was limited to the time period through the date of the Third Amended Complaint filed on June 16, 2016.  Rather, Plaintiffs' claims are continuing claims, the SELA Project-caused damages are ongoing, and all of the new 51 named-Plaintiffs are neighbors to the existing Plaintiffs and have suffered alongside one another, under the same Project conditions and hazards.  There is nothing to distinguish the new Plaintiff claims from the existing Plaintiffs' claims, other than the extent and repair of damages caused by the SELA Project to their properties.  The SWB's responsibility for these SELA Project damages and the Contractors' involvement in the SELA Project relative to the damages remain unchanged from one Plaintiff to the next, regardless of when that Plaintiff was added to the case.

Furthermore, the Contractors' immunity from the SWB's third party claims and the timing of when this immunity was determined by the Court are entirely irrelevant to resolution of

Plaintiffs' damages claims against the SWB.  This was already demonstrated during the first removal of the case to this Court.  The Court resolved the Contractors' federal contractor immunity defense without resolving the Plaintiffs' claims or delving into the elements of or evidence pertaining to Plaintiffs' claims.  The SWB is attempting to impose artificial limitations on Plaintiffs' damage claims in an effort to justify its third party claims that the SWB knew would result in removal, further delay of Plaintiffs' claims, and ultimately dismissal by the Court.  Because the Court will undoubtedly dismiss the SWB's third party claims against the Contractors once again and on the very same grounds as the previous dismissal, there is no legitimate basis for federal jurisdiction over this case since the third party claims provide the sole basis for being in this Court.

        c.       **Judicial Economy & Fairness are Served by Declination of Jurisdiction Over Plaintiffs' Claims Against the SWB**

The procedural history of this case demonstrates the waste of judicial resources and unfair treatment of Plaintiffs that have resulted from the removal, remand, and removal of Plaintiffs' claims against the SWB over the course of the last 28 months.

Plaintiffs' claims against the SWB are purely state law claims and 28 months ago Plaintiffs filed these claims properly in state court, hoping for a fair and timely resolution of these claims.  Instead, Plaintiffs' claims were removed to this Court, and despite Plaintiffs' best efforts, the case remained in federal court for well over a year.  While the case was in this Court, efforts of counsel and the Court were largely focused on the resolution of the SWB's third party claims against the Contractors, with hundreds of thousands of pages of discovery exchanged, numerous depositions taken, extensive briefing filed, and oral arguments devoted to the Contractors' federal contractor immunity defense. During this same time period, discovery on

Plaintiffs' claims was conducted; numerous dispositive motions affecting Plaintiffs' claims were extensively briefed, but not resolved; mediation was cancelled unilaterally by the SWB; and trials were never conducted due to the Court's dismissal of the SWB's claims against the Contractors and the subsequent remand of Plaintiffs' claims to state court.

The momentum Plaintiffs enjoyed in this Court through the expedited discovery, mediation, and trial schedule came to a screeching halt when the case was remanded back to state court. Plaintiffs attempted to keep their claims in this Court due to the significant efforts expended under the DSO, but this attempt failed and Plaintiffs' claims were remanded to state court. Plaintiffs expended significant time, money, and resources in pursuing their claims in this Court prior to remand.

Once Plaintiffs returned to state court they faced further delay of their claims, approximately five to six months, due to a pending judicial assignment that came only after a judicial election and subsequent run-off. However, upon assignment to a judicial section, Plaintiffs' claims quickly picked up momentum again as the state court heard exceptions and motions, issued the CMO, and selected a trial date for January 2018 of the five Plaintiffs' claims. Then, eight months after remand and mere days before the state court was to hear Plaintiffs' motion to sever their claims from the SWB's third party demand, the entire case, including Plaintiffs' claims, was removed to this Court for a second time.

Now Plaintiffs' claims are again before this Court and Plaintiffs face the prospect of having to start, for the third time, with discovery of their claims, filing dispositive motions, pretrial preparation, and trial of their claims. The burden imposed on Plaintiffs due the "yo-yoing" of their claims between state and federal court has been onerous. Plaintiffs have been living and working in properties damaged by the SWB's SELA Project for a long as six years

and first filed their claims against the SWB for these damages well over two years ago, yet Plaintiffs have not had a single trial, settlement conference, or mediation.  Instead, the SWB and the Contractors have monopolized the time and resources of the courts in discovering and resolving the federal contractor immunity issue, while Plaintiffs have been sidelined.

Not only have Plaintiffs been treated unfairly as a result of the procedural posturing arising from the SWB's third party claims, but this Court and the state court have expended significant judicial resources on this litigation, yet the case still remains on their dockets with no end in sight.  If every time the Plaintiffs amend their claims to add additional named-plaintiffs, the SWB files the same third party claims against the Contractors, triggering federal jurisdiction and subsequent dismissal of the SWB's third party claims on federal contractor immunity grounds, Plaintiffs' claims will continue to bounce back-and-forth between state and federal court.  The state court has agreed to hold the January 2018 trial date for Plaintiffs until the resolution of the remand issue; Plaintiffs plead with the Court to remand the case to allow Plaintiffs to finally have their day in court, albeit almost three years after first filing suit.

> **d. Third Party Plaintiff SWB Manipulated the Forum by Alleging Already Dismissed Claims Against the Contractors**

The SWB brought the most recent, frivolous, third party claims against the Contractors in an effort to manipulate the forum for this litigation and inject onerous delay into resolution of Plaintiffs' claims.

The SWB is well aware that its claims against the Contractors are meritless.  The SWB has been sued by property owners as a result of damages caused by the SELA Project's earlier phases; the SWB has in turn alleged third party claims against its contractors on the Project; and these contractors have been dismissed from the case on federal contractor immunity grounds.

*See Holzenthal, Shimon, supra.*  Despite knowing that the Contractors enjoy immunity from its SELA Project claims, the SWB proceeded to file its third party claims against the Contractors not only once, but now twice, and history has repeated itself.  In November 2016, after extensive discovery, briefing, and oral arguments, this Court dismissed the Contractors from the case with prejudice on, to no surprise, federal contractor immunity grounds.   The Fifth Circuit just affirmed this dismissal.

Then, after Plaintiffs' claims against the SWB were finally set for trial in state court and discovery was underway, the SWB again brought third party claims against the Contractors, the very claims that have already been dismissed with prejudice by this Court.  The SWB knew alleging these claims, which are barred by *res judicata*, would trigger removal by the Contractors and, in fact, the Contractors did remove these claims. Plaintiffs' claims have once again been removed to a forum where Plaintiffs must start over in terms of discovery, pretrial deadlines, motion practice, and trial.

The SWB has attempted to delay resolution of Plaintiffs' claims throughout this litigation.  The SWB brought frivolous claims against the Contractors that undoubtedly would be dismissed, but not after extensive discovery and motion practice.   The SWB unilaterally cancelled Court-ordered mediation of Plaintiffs' claims last December, despite being party to the DSO and participating in the pre-mediation discovery and process.  Once the case was remanded back to state court, the SWB again brought its frivolous third party claims, knowing these claims would trigger removal and thus, delay of Plaintiffs' claims.   In fact, immediately after the removal papers were filed, the SWB directed third parties to not respond to Plaintiffs' subpoenas issued in state court, with returns due on the date of removal.  The SWB has also evidenced its delay strategy by, among other actions, indicating its intent to file untimely writs on exceptions it

lost, declining to participate in pretrial discovery, and seeking unreasonable extensions on its expert report deadlines. Plaintiffs should not be subjected to this treatment by the SWB and instead should be allowed to finally proceed to trial in state court against the SWB in January 2018.

### B. The Court Should Sever Plaintiffs' Claims Against the SWB & Remand the Claims to State Court

#### 1. Applicable Law on Severance & Remand

A district court has broad discretion to sever and remand claims. *Anderson v. Red River Waterway Com'n*, 231 F.3d 211, 214 (5th Cir. 2000). Severance of claims is authorized by Federal Rules of Civil Procedure 14(a)(4) and 21, and remand is governed by 28 U.S.C. § 1447(c). Under Section 1447(c), '[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[2]

In determining whether to sever a claim, a district court may consider the following factors: (1) whether the claims arise from the same transaction or occurrence, (2) whether the claims have common questions of law or fact, (3) whether settlement or judicial economy is promoted by severance, (4) whether prejudice will result or be averted by severance, and (5) whether different or same witnesses and proof are required by the claims. *E. Cornell Malone Corp. v. Sisters of the Holy Family, St. Mary's Academy of the Holy Family*, 922 F.Supp.2d 550, 561 (E.D. La. 2013).

#### 2. The Court Should Sever & Remand Plaintiffs' Claims

---

[2] Section 1774(c) also provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." If the Court indeed remands the case back to state court for the second time, Plaintiffs seek payment of costs and attorneys' fees from the SWB for raising frivolous third party claims against the Contractors solely for the purpose of providing a basis for removal by the Contractors and against the Contractors for breaching their agreement to Plaintiffs that they would wait until the expedited hearing on Plaintiffs' motion to sever in state court prior to removing the case to this Court.

For the same reasons as discussed above with regard to supplemental jurisdiction, this Court should also sever Plaintiffs' claims from the SWB's third party claims, and remand Plaintiffs' claims to state court.  In summary, the following reasons support severance and remand.

Plaintiffs' claims are purely state law claims, arising from constitutional and tort issues, and allege property and related damages caused by the SWB's SELA Project.  In contrast, the SWB's third party claims are not viable, as these claims are subject to yet another dismissal with prejudice on federal contractor immunity grounds, and these claims are independent of Plaintiffs' claims, arising from contractual, indemnity, and subrogation issues.

As demonstrated by the history of this case, the SWB's third party claims can be resolved without consideration of the legal and factual issues pertaining to Plaintiffs' claims.  Indeed, the Contractors' previous federal contractor immunity defense was resolved by this Court through evaluation of evidence and law that are independent of that pertaining to Plaintiffs' claims.

Both settlement and judicial economy are supported by severance and remand.  If the SWB is permitted to continuously delay discovery, motion practice, and trial of Plaintiffs' claims by alleging frivolous claims against the Contractors, the SWB will likewise defer any serious consideration of settlement of Plaintiffs' claims.  If Plaintiffs' claims continuously bounce between state and federal court, the judges, law clerks, and court staff will expend unnecessary resources and time on Plaintiffs' claims.

Further prejudice will result to Plaintiffs if their claims remain in this Court.  Plaintiffs were in the midst of preparing for trial in state court when the case was removed for the second time.  The state court has graciously agreed to hold the January 2018 trial date for Plaintiffs in case their claims are remanded.  Plaintiffs have suffered unreasonable delay and onerous burdens

in having their claims, due to no fault of their own, delayed by the removal, remand, and removal at the hands of the SWB and Contractors.  Plaintiffs simply seek to have their day in court after living and working in damaged properties for years on end and patiently waiting over two years during the course of this litigation to finally have a court resolve their claims.

Neither the SWB nor the Contractors will suffer prejudice as a result of severance and remand.  The Court will resolve the Contractors' federal contractor immunity defense and again dismiss with prejudice the SWB's third party claims against the Contractors.  Allowing the Plaintiffs to proceed with their claims in state court, when these claims have no bearing whatsoever on the soon-to-be-dismissed third party claims, will pose no prejudice to the SWB and Contractors, particularly since these are large entities with numerous counsel of record and abundant resources.

> **C.  Alternatively, if the Court Exercises Supplemental Jurisdiction Over Plaintiffs' Claims, Jurisdiction Should be Retained Until the Ultimate Conclusion of the Case**

Alternatively, if the Court determines it should exercise supplemental jurisdiction over Plaintiffs' claims against the SWB (which Plaintiffs contest), Plaintiffs request that the Court continue to exercise this jurisdiction through the resolution of Plaintiffs' claims so as to avoid any further prejudice and delay to Plaintiffs' claims.  The history of this case demonstrates that as long as the SWB continues to allege third party claims against the Contractors, the Plaintiffs' own claims against the SWB will be hijacked back and forth between federal and state court as these third party claims are alleged, dismissed, alleged, dismissed, and so on.  Plaintiffs also request that if this Court retains Plaintiffs' claims, then it also set trial of Plaintiffs' claims for January 8, 2018, the same date as in state court, and set expedited deadlines for resolving

dispositive motions, discovery, and settlement conferences/mediation to coincide with this trial date.

**IV.          CONCLUSION**

For the foregoing reasons, Plaintiffs ask that the Court: (1) decline to exercise supplemental jurisdiction over Plaintiffs' claims against the SWB, (2) sever Plaintiffs' claims from the SWB's third party claims against the Contractors, and (3) remand Plaintiffs' claims to state court where a trial date of January 2018 is set and allow Plaintiffs to finally have their day in court after years of delay and prejudice.

Respectfully submitted:

**BRUNO & BRUNO, LLP**

Joseph M. Bruno (La. Bar No. 3604)
Daniel A. Meyer (La. Bar No. 33278)
855 Baronne Street
New Orleans, LA 70112
Telephone: (504) 525-1335
Fax: (504) 581-1493
jbruno@brunobrunolaw.com
dmeyer@brunobrunolaw.com

AND

**THE WHITAKER LAW FIRM, APC**

Michael T. Whitaker (*Pro Hac Vice*)
100 Dolores Street
Carmel, CA 93923
Telephone: (831) 624-5556
Fax: (831) 624-5509
michaelwhitaker@whitakerlaw.net

    */s/ Alexis A. Butler*
Alexis A. Butler (La. Bar No. 32376)
201 St. Charles Ave.
Suite 2500
New Orleans, LA 70170

Telephone: (504) 313-0168
Fax: (831) 624-5509
Email: lexybutler@whitakerlaw.net

ATTORNEYS FOR PLAINTIFFS


**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 29th day of August 2017, I served a copy of the foregoing on

all counsel of record by filing through the Court's CMECF e-filing system.


   _/s/  Alexis A. Butler_

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIZABETH SEWELL, ET AL.,** ) | |
| ) | |
| **Plaintiffs** ) | |
| **VERSUS** ) | **CIVIL ACTION NO. 17-8128** |
| ) | |
| **SEWERAGE & WATER BOARD OF** ) | **SECTION "N" (3)** |
| **NEW ORLEANS,** ) | |
| **Defendant** ) | |
| _____ ) | |

## NOTICE OF SUBMISSION

PLEASE TAKE NOTICE that undersigned counsel for Plaintiffs, Elizabeth Sewell, *et al.*, will submit the accompanying Motion to Sever and Remand for submission before the Honorable Kurt D. Engelhardt, United States District Judge for the Eastern District of Louisiana, assigned to this matter, at 500 Poydras St., New Orleans, Louisiana 70130, on the 13th day of September, 2017.


Respectfully submitted:

**BRUNO & BRUNO, LLP**

Joseph M. Bruno (La. Bar No. 3604)
Daniel A. Meyer (La. Bar No. 33278)
855 Baronne Street
New Orleans, LA 70112
Telephone: (504) 525-1335
Fax: (504) 581-1493
jbruno@brunobrunolaw.com
dmeyer@brunobrunolaw.com

AND

**THE WHITAKER LAW FIRM, APC**

Michael T. Whitaker (*Pro Hac Vice*)
100 Dolores Street
Carmel, CA 93923
Telephone: (831) 624-5556
Fax: (831) 624-5509
michaelwhitaker@whitakerlaw.net

   */s/ Alexis A. Butler*
Alexis A. Butler (La. Bar. No. 32376)
201 St. Charles Ave.
Suite 2500
New Orleans, LA 70170
Telephone: (504) 313-0168
Fax: (831) 624-5509
Email: lexybutler@whitakerlaw.net

ATTORNEYS FOR PLAINTIFFS


**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of August 2017, I served a copy of the foregoing on

all counsel of record by filing through the Court's CMECF e-filing system.


   */s/ Alexis A. Butler*