UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ARIYAN, INC., ET AL.                                        CIVIL ACTION

v.                                                          NO. 21-534

SEWERAGE & WATER BOARD OF                                   SECTION "F"
NEW ORLEANS, ET AL.


ORDER AND REASONS

Before the Court is the defendants' Rule 12(b)(6) motion to dismiss. For the reasons that follow, the motion is GRANTED.

**Background**

When a flood-control project damaged their homes and businesses in Uptown New Orleans, the 70 plaintiffs in this case took the defendant[1] – the Sewerage & Water Board of New Orleans (SWB) - to Louisiana state court.[2] In state-court actions "specifically not[ing] that 'any substantial interference with the free use and enjoyment of property may constitute a taking of

---

[1] In this case, the plaintiffs have also sued Ghassan Korban, "in his [official] capacity as Executive Director" of the SWB. Aside from prefatory language naming Korban as a defendant, the plaintiffs' complaint mentions Korban just once (with regard to a written demand for payment the plaintiffs made upon the SWB). See Compl., ¶ 54.

[2] In their various state-court actions, the plaintiffs sought compensation for property damages, losses of residential use and enjoyment, and business losses occasioned by the project at issue.

1

property within the meaning of the federal and [Louisiana] constitutions," the plaintiffs secured monetary awards for property damage and restrictions they sustained in connection with the project at issue. See Opp'n at 3. Acknowledging that those successful lawsuits resulted in "state court judgments [that] memorialized and quantified the just compensation to which [they] are entitled," the plaintiffs now bring § 1983 and declaratory judgment claims against the SWB in *this* Court for the SWB's allegedly "unlawful refusal to pay" such compensation. See, e.g., id. at 6. The plaintiffs make no bones about their intention in bringing this federal action: as they put it, they "have exhausted their state court remedies in seeking just compensation from the [SWB], have not received the just compensation that was awarded, and now are seeking to enforce the payment of that just compensation in this Court." See id. at 8. The SWB concedes that it has not yet made good on the plaintiffs' damages awards but insists that it does plan to pay the plaintiffs in the future.

Thus, with unpaid state-court judgments in hand and no "certainty at all that they will ever be paid just compensation for their loss of property interests," the plaintiffs urge this Court to "recognize that a Section 1983 claim is available when state actors take private property but fail to pay [a] state court judgment establishing the amount of just compensation due." See id. at 6-7.

2

I.

Rule 12(b)(6) allows a party to move for dismissal of a complaint that fails to state a claim upon which relief can be granted. "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To demonstrate a facially plausible basis for relief, a plaintiff must plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In determining whether a plaintiff has met this burden, a court must "accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff," but must not accord an assumption of truth to conclusory allegations and threadbare assertions. Thompson v. City of Waco, 764 F.3d 500, 502 (5th Cir. 2014).

The foregoing presumptions are not to be applied mindlessly, however. Thus, in considering a motion to dismiss, the Court may review any documents attached to or incorporated into the plaintiff's complaint by reference. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004). In addition, the Court may judicially notice matters of public record and other facts not subject to reasonable dispute. See United States *ex*

3

*rel.* Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 379 (5th Cir. 2003).

## II.

With this standard in view, the Court proceeds to evaluate whether the plaintiffs' complaint states a plausible claim for relief.

### A.   Count One: § 1983 Claims

1. <u>The Plaintiffs Fail to State a Baseline Legal Violation</u>

The crux of the plaintiffs' case is a § 1983 claim for asserted violations of the Takings Clause[3] and constitutional due process and civil rights. See Compl., ¶¶ 56–68. 42 U.S.C. § 1983 "provides injured plaintiffs with a cause of action when they have been deprived of federal rights under color of state law." Doe v. Dall. Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998). To state a claim under § 1983, a plaintiff must first allege a threshold violation of constitutional or statutory rights. See, e.g., D.A. *ex rel.* Latasha A. v. Hous. Indep. Sch. Dist., 629 F.3d 450, 456 (5th Cir. 2010).

Here, the plaintiffs assert that the SWB's refusal to pay their state-court judgments violates their Fifth Amendment "right"

---

[3]   The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use[] without just compensation," and is "made applicable to the States by the Fourteenth Amendment." U.S. CONST. amend. V; Kelo v. City of New London, 545 U.S. 469, 472 n.1 (2005).

4

"to be actually paid just compensation for the taking of their property by inverse condemnation" "without unreasonable delay."[4] See Compl., ¶¶ 58, 62. The Court understands the plaintiffs' frustrations, but this claim is legally baseless. Courts have consistently observed a distinction between a state's *taking* of property without just compensation and its temporary *retention* of just compensation that has been fixed and awarded by a state court. In this district specifically, Judge Lemelle forcefully applied this principle in Violet Dock, where he dismissed a similar § 1983 claim because a state's temporary delay in paying a state-court judgment does not give rise to a constitutional violation.[5] See 2019 WL 6307945, at *3. As he aptly concluded there:

> Plaintiff has failed to state a claim under § 1983. Plaintiff's complaint and opposition demonstrate that it is not seeking to bring a claim for the unlawful taking of the property expropriated by [the state agency defendant], because final judgment has already been rendered on that issue in state court. Rather plaintiff only wishes to pursue its entitlement to the state court's compensation award and is attempting to use § 1983 as the vehicle for such relief. However, the "property right created by a judgment against a government entity is not a right to payment at a

---

[4] The plaintiffs also claim that their Fourteenth Amendment "due process rights have been violated, because Defendants have treated them differently than non-litigants merely because Plaintiffs have exercised their constitutional right to file suit to protect their rights and property interests." See Compl., ¶ 64. The plaintiffs' claim in this regard has no basis in law.

[5] Recognizing the threat that Violet Dock poses to their case, the plaintiffs make much of the fact that the pronouncements of a sister section of this court do not bind the Court here. That is, of course, true in the abstract.

5

> particular time, but merely the recognition of a continuing debt of that government entity." Guilbeau v. Par. of St. Landry, 2008 WL 4948836, at *10 (W.D. La. Nov. 19, 2008), aff'd, 341 F. App'x 974 (5th Cir. 2009) (citing Minton v. St. Bernard Par. Sch. Bd., 803 F.2d 129, 132 (5th Cir. 1986)); Davis v. Cantrell, 2018 WL 6169255, at *5 (E.D. La. Nov. 26, 2018). Thus, defendant's delay in paying . . . the state court's judgment has not given rise to a Fifth Amendment violation. Additionally, plaintiff's attempt to distinguish Minton and subsequent cases on the grounds that the judgments in those cases did not involve takings of private property is unavailing, because plaintiffs makes clear in its opposition that it is not seeking to relitigate the underlying takings claim or the amount of just compensation owed.

Id. Judge Lemelle's holding was grounded in centuries of precedent establishing that a state's temporary deprivation of damages does not violate any constitutional right. See, e.g., Louisiana ex rel. Folsom v. City of New Orleans, 109 U.S. 285, 289 (1883) ("A party cannot be said to be deprived of his property in a judgment because at the time he is unable to collect it."); Minton, 803 F.2d at 132 ("[T]he property right created by a judgment against a government entity is not a right to payment at a particular time but merely the recognition of a continuing debt of that government entity."). In addition, the length of delay in paying the judgments is not helpful to the plaintiffs. See, e.g., Guilbeau, 341 F. App'x at 975 (deeming plaintiff's "constitutional argument [] foreclosed by Minton" where state's refusal to pay plaintiff's damages had persisted for *seventeen years*).

6

This Court finds no reason not to follow the Violet Dock Court's lead in this nearly identical case. Here, as in Violet Dock, the plaintiffs openly admit that they are suing not to *determine* the just compensation to which they are constitutionally entitled, but to enforce the *state courts*' determinations of that very amount. That issue has been fully litigated in state court and the plaintiffs repeatedly acknowledge as much in their opposition. See, e.g., Opp'n at 8 ("Here, Plaintiffs are not seeking to re-litigate any issue decided by the state court. Plaintiffs recognize that the amount of compensation that is due is binding here. Instead, Plaintiffs are seeking to compel payment of the just compensation judgments . . . .").

In search of a way to do so, the plaintiffs turn to the Supreme Court's decision in Knick v. Township of Scott, 139 S. Ct. 2162 (2019), which explicitly overruled the Court's prior decision in Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985). In Knick, the Court overruled the "state-litigation requirement of Williamson County" and accordingly held that "[a] property owner may bring a [federal] takings claim under § 1983 upon the taking of his property without just compensation by a local government." Knick, 139 S. Ct. at 2179. The Justices said nothing, however, about a plaintiff's ability to bring a § 1983 suit to enforce a *state court*'s judgment in a takings case that has already been litigated in state court.

7

To the contrary, the question in Knick was limited to whether Williamson County should have been overruled, and thus, whether "a property owner whose property has been taken by a local government has not suffered a violation of his Fifth Amendment rights – and thus cannot bring a federal takings claim in federal court – until a state court has denied his claim for just compensation under state law." Id. at 2167.

In overruling Williamson County, the Supreme Court left in place its decision in San Remo Hotel, L.P. v. City and County of San Francisco, 545 U.S. 323 (2005), where it held that a "state court's resolution of a claim for just compensation under state law generally has preclusive effect in any subsequent federal suit." Id. In fact, San Remo's continued application is a logical linchpin of the Knick decision. Indeed, but for San Remo preclusion, the pre-Knick "takings plaintiff [would not have found] himself in [the] Catch-22" "preclusion trap" the Court took issue with in Knick; he still could not have gone "to federal court without going to state court first; but if he [went] to state court and [lost], his claim [*would not*] be barred in federal court." See id. That was not the case in the pre-Knick world of San Remo *and* Williamson County.

Thus, the plaintiffs' core argument – namely, that "Knick Provides a Direct Legal Basis" for the plaintiffs' § 1983 claims – rests on a fundamental misunderstanding of Knick and its

8

interworking with San Remo.  To the contrary, the defendants are correct that Knick makes "where to file a constitutional takings suit [] an either/or proposition"; a plaintiff who chooses to bring suit in state court cannot later come to federal court to relitigate issues the state court already decided.  See Mot. at 12; see also San Remo, 545 U.S. at 341–48.

That is precisely what the plaintiffs wish to do here.

2. Practical and Structural Considerations Also Compel Dismissal

Apart from the flaws in the plaintiffs' claims that have already been discussed, consider the implications of blessing the plaintiffs' transparent attempt to use § 1983 to collect a state-court judgment in federal court.  Doing so would likely run afoul of the full faith and credit statute, encourage forum shopping, and erode the comity federal courts are to diligently maintain with state courts, who are certainly capable of enforcing their own judgments.[6]

This predictable parade of confusion has led countless federal courts, including this one, to resist calls to enforce judgments rendered in state court.  See, e.g., Bennett v. City of New Orleans, 2004 WL 60316, at *3 (E.D. La. Jan. 9, 2004)

---

[6]   It might also, in this particular case, violate the Louisiana Constitution's prohibition on seizures of public property or public funds to pay judgments.  See LA. CONST. art. XII, § 10(C). The Court need not, and accordingly does not, address this issue here.

9

("Plaintiffs' claims impinge on comity principles that operate in the area of federal-state relations. To hold that every unpaid state court judgment provides a would-be plaintiff with a cognizable due process claim 'would assign the federal courts the role of ombudsmen in monitoring the execution of state court judgments,' a role that would surely be destructive of federal-state relations." (quoting Biser v. Town of Bel Air, 991 F.2d 100, 105 n.2 (4th Cir. 1993) (Wilkinson, J.)). Under no constitutional guise should federal courts "become embroiled in a party's attempt to enforce state court judgments . . . against states and municipalities." See Williamson v. Chicago Transit Auth., 185 F.3d 792, 795 (7th Cir. 1999).

As in Bennett, the plaintiffs' "reliance on Vogt v. Board of Commissioners of the Orleans Levee District, 294 F.3d 684 (5th Cir. 2002) . . . is misplaced." While the plaintiffs are correct in noting that "Bennett expressly distinguished Vogt [] because the Vogt plaintiffs had stated a 'federal takings claim,'" Vogt is nonetheless no help to them here. For starters, the plaintiffs in this case have *not* stated a federal takings claim; to the contrary, they have disclaimed any intent to relitigate the takings claims they advanced in state court. Moreover, the bottom-line conclusion the plaintiffs draw from Vogt is incorrect: Vogt did *not*, as the plaintiffs suggest, create a free-floating rule that a state's "failure to pay a state court judgment awarding just compensation

10

for a taking itself effected an unconstitutional taking that could be remedied via a Section 1983 action," but merely declared, in a fact-specific manner, that the state's retention of mineral royalties made the minerals themselves the object of a constitutional taking since the judgment at issue was "just an accounting or quantification of the mineral royalties" flowing from ownership of the minerals. See Vogt v. Bd. of Comm'rs of Orleans Levee Dist., 2002 WL 31748618, at *3 (E.D. La. Dec. 5, 2002). In other words, royalties flowing from ownership of property can perhaps be "taken" by a state which refuses to remit such property-linked royalties to a plaintiff, but a state-court damages award that itself becomes property of the plaintiff is not "taken" by a state's temporary failure to make good on the award. See id. at *2 (drawing "crucial" "distinction" between earlier taking *already* "adjudicated in the state courts" and *ongoing* taking of "mineral royalties themselves" alleged before the court).

\*   \*   \*

42 U.S.C. § 1983 provides a cause of action to parties subjected to a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States, but the plaintiffs allege no such deprivation here.

### B.   Count Two: Declaratory Judgment Claims

That leaves the plaintiffs' second and final cause of action. There, the plaintiffs seek a judicial declaration of the parties'

11

rights and duties with regard to a so-called "'Damages SOP,'[7] specifically created in anticipation" of the kind of damages the plaintiffs suffered as a result of the flood-control construction at issue. See Compl., ¶¶ 69–75.

There is no "*per se* rule requiring a district court to hear a declaratory judgment action"; rather, "the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995); Sherwin-Williams Co. v. Holmes County, 343 F.3d 383, 394 (5th Cir. 2003).

Here, there is little reason to – and perhaps abundant reason *not* to – allow the plaintiffs' largely conclusory declaratory judgment allegations to proceed as standalone claims in federal court. In 2017, then-District Judge Engelhardt remanded a previous iteration of this litigation to state court in light of this Court's "limited jurisdiction and in light of the particularly local nature of this dispute with the Sewerage and Water Board."

---

[7]   The "Damages SOP" is a claims process established by the SWB and the U.S. Army Corps of Engineers "to identify properties subject to damage as a result of the [] Project [at issue] and to investigate and resolve [related] property damage." See Compl., ¶ 70. In the second count of their complaint, the plaintiffs seek judicial declarations that they are third-party beneficiaries to the Damages SOP and that the SWB's alleged failures to follow through on its commitments thereunder have violated the plaintiffs' contractual and constitutional rights. See id. ¶¶ 72-75.

See Sewell v. Sewerage & Water Bd. of New Orleans, 2017 WL 5649595, at *1 (E.D. La. Jan. 5, 2017), aff'd, 697 F. App'x 288 (5th Cir. 2017).  The plaintiffs' dispute with the SWB is no less local now, and for the reasons discussed at length with regard to the deficient § 1983 claims at the heart of this case, dismissing this action in favor of further state-court proceedings – with state-court judges, state-court judgments, state-resident plaintiffs, and a state-agency defendant – is the best use of this Court's "unique and substantial discretion."  Cf. Wilton, 515 U.S. at 286.

\*   \*   \*

State courts can enforce their own judgments.

Accordingly, IT IS ORDERED: that the defendants' motion to dismiss is GRANTED.  The plaintiffs' claims are DISMISSED WITH PREJUDICE.[8]

New Orleans, Louisiana, June 9, 2021

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[8]   The plaintiffs' request for leave to amend their complaint is denied as futile.  See, e.g., Stripling v. Jordan Prod. Co., 234 F.3d 863, 872-73 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if . . . the amended complaint would fail to state a claim upon which relief could be granted." (citations omitted)).

13